1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

SALVADOR CARRILLO LEON,

Case No.  1:13-cv-00768-AWI-SAB-HC

12

Petitioner,

FINDINGS AND RECOMMENDATION
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

13

v.

14

P. BRAZELTON,

15

Respondent.

16
17

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18

pursuant to 28 U.S.C. §2254.

19

## I.

20

## BACKGROUND

21

Petitioner is currently in the custody of the California Department of Corrections and

22

Rehabilitation pursuant to a judgment of the Superior Court of California, County of Tulare,

23

following his conviction by jury trial on April 22, 2010, of multiple offenses, including two

24

counts of second degree murder (Cal. Penal Code § 187) and two counts of gross vehicular

25

manslaughter while intoxicated (Cal. Vehicle Code § 23152).   He was sentenced to two

26

indeterminate life terms.

27

Petitioner timely filed a notice of appeal.  On November 3, 2011, the Fifth District Court

28

1

1  of Appeal affirmed the judgment.  (LD[1] 18.)  On December 6, 2011, Petitioner filed a petition for

2  review in the California Supreme Court.  (LD 19.)   The petition was summarily denied on

3  February 1, 2012.  (LD 20.)

4         On November 5, 2012, Petitioner filed a petition for writ of habeas corpus in the Tulare

5  County Superior Court.  (LD 21.)   The petition was summarily denied on November 9, 2012.

6  (LD 22.)  He then filed a habeas petition in the Fifth District Court of Appeal on April 2, 2013.

7  (LD 23.)  The appellate court denied the petition without comment on May 1, 2013.  (LD 24.)

8  On June 19, 2013, Petitioner filed a habeas petition in the California Supreme Court.  (LD 25.)

9  The petition was summarily denied on August 21, 2013.  (LD 27.)

10        On May 1, 2013, Petitioner filed the instant federal habeas petition in this Court.  He

11  raises the following grounds for relief: 1) He alleges defense counsel rendered ineffective

12  assistance; 2) He contends the prosecutor committed misconduct; 3) He claims the police

13  committed misconduct; 4) He claims the trial judge admitted evidence in violation of his

14  constitutional rights; 5) He alleges the trial judge committed misconduct; 6) He contends the trial

15  court erred in its instructions to the jury; and 7) He claims his convictions for murder and

16  vehicular manslaughter violate principles of double jeopardy.  On August 23, 2013, Respondent

17  filed an answer to the petition.  On September 23, 2013, Petitioner filed a traverse.

## II.

## STATEMENT OF FACTS[2]

On February 2, 2009, at approximately 2:20 a.m., Jeff Schaeck was driving an
18–wheel truck southbound on Highway 99; there was no fog and the weather
was clear. He was alerted over his radio that there was a northbound driver in the
southbound lanes. Immediately thereafter, Schaeck saw the headlights of the
northbound driver coming toward him; that driver was in the fast lane.

Kurt Moreno was driving his big rig truck on northbound Highway 99 at
approximately 2:20 a.m. on February 2, 2009. Near Avenue 24, Moreno noticed a
truck driving northbound in the southbound lanes. After seeing the truck, Moreno

_____

[1] "LD" refers to the documents lodged by Respondent with his response.

[2] The Fifth DCA's summary of the facts in its November 3, 2011, opinion is presumed correct. 28 U.S.C. §§
2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts
the factual recitations set forth by the Fifth DCA. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir.2009),
cert. denied, 130 S.Ct. 1086 (2010) ("We rely on the state appellate court's decision for our summary of the facts of
the crime.").

called 911 to report it.

Moreno traveled parallel to Leon's truck for several miles. During this time Moreno could hear at least four other trucks honking their air horns at different times. He saw at least one truck flash its lights at Leon's truck. Moreno never saw Leon's truck react to the air horns or lights.

Moreno saw a vehicle heading towards Leon's truck, saw the vehicle swerve in an attempt to miss the truck, and observed the vehicles collide head on. Moreno stopped his truck and went to the vehicles; another big rig on the scene blocked traffic. Moreno used a fire extinguisher on Leon's truck to try and put out the fire and then went to Saechao's vehicle when he heard her crying for help. Moreno told Saechao she was being helped. Shortly thereafter the fire truck arrived on the scene and Moreno stepped back to allow the paramedics to work.

Saechao testified she was driving from Sacramento on southbound Highway 99; her husband and infant son were in the car. She switched lanes to pass two cars in front of her. After switching lanes, she saw headlights flash in front of her and swerved. She did not recall anything after that until she awoke in the hospital. She was told that her husband and son had died in the collision. She suffered fractured ribs, a fractured vertebra, and an injury to her jaw.

Deputy Sheriff Merced Zamora arrived on the scene and cut the seatbelt off of Leon. Zamora noticed a strong odor of alcohol coming from Leon. Zamora checked the other vehicle and cut the infant car seat out of the car, with the infant in it. Zamora checked the male passenger and noted he was deceased. Saechao had to be cut from the car with the Jaws of Life and air lifted to the hospital.

Highway Patrol Officer Alexis Mantilla also was dispatched to the scene of the collision. Mantilla noticed a heavy odor of alcohol coming from Leon. Leon was trying to remove the emergency medical equipment and waving his arms and using profanity. Leon's eyes were twitching, red, and glossy. His speech was broken and slurred. Leon was unable to track stimuli with his eyes. The preliminary alcohol screening showed a blood-alcohol level of between 0.18 and 0.19 percent.

Leon told Mantilla that he had drunk two Bud Lights at a bar and then got onto Highway 99 at Avenue 24. Leon insisted he had been in the northbound lanes and that a vehicle crossed into his lane. Mantilla testified that a person entering the freeway from Avenue 24 and heading the wrong direction would have seen a "wrong way" sign posted with an arrow.

Mantilla also testified that once a person has a DUI conviction, he or she is required to attend a program to get his or her license back. The program teaches DUI offenders that it is dangerous to drink and drive because they may kill someone. The trial court took judicial notice that the SB 38 program is a DUI offender program that teaches the dangers of drinking and driving.

Leon was interviewed again at the hospital. He explained that he had been visiting a friend, had 2 or 3 cans of beer, and then headed home. He claimed he was headed north on Highway 99 and that a car got in his way.

The sample of Leon's blood taken at 3:48 a.m. showed a blood-alcohol level of 0.25 percent. Jennifer Kearney, a lab supervisor at Mineral King Laboratories, opined that a man of Leon's size would have to drink 13 to 14 twelve-ounce beers

3

to reach a 0.25 percent blood-alcohol level, assuming no burnoff. Generally, a person burns off 0.02 percent blood alcohol per hour.

Ruben Gonzales testified that Leon was at his house and had drunk four 12–ounce cans and two bottles of beer before leaving to drive home.

Leon was charged with two counts of second degree murder, two counts of gross vehicular manslaughter while intoxicated, one count of DUI causing injury, and one count of driving with a blood-alcohol content greater than 0.08 percent. It was alleged that Leon inflicted great bodily injury and that he had suffered four convictions of Vehicle Code section 23152, subdivision (a).

The parties stipulated that Vilai Her and Isaac Her died as a result of blunt force trauma in the collision. Leon admitted three DUI convictions.

On January 21, 2010, the jury returned verdicts of guilty on all counts and found all enhancements true.

Leon was sentenced to two indeterminate terms of 15 years to life on the second degree murder convictions. The terms for the gross vehicular manslaughter convictions were stayed pursuant to section 654. A total determinate unstayed term of five years was imposed for the other convictions and enhancements.

(LD 18.)

### III.

### DISCUSSION

**A.   Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.   28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Tulare County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

**B.     Standard of Review**

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

1  state court decision is objectively unreasonable.  See LaJoie v. Thompson, 217 F.3d 663, 669

2  (9th Cir. 2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

3         AEDPA requires considerable deference to the state courts.  "[R]eview under §

4  2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

5  the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review."

6  Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations

7  by state courts are presumed correct absent clear and convincing evidence to the contrary."

8  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a

9  state court factual finding is not entitled to deference if the relevant state court record is

10  unavailable for the federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963),

11  overruled by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

12        **C.    Review of Claims**

13        1.    Ineffective Assistance of Counsel

14        In his first claim for relief, Petitioner contends he received ineffective assistance of

15  counsel when defense counsel: 1) failed to prepare and investigate the facts surrounding the case;

16  2) failed to present evidence in the form of expert witness testimony as to the effects of fog and

17  visibility; 3) failed to challenge the chain of custody with respect to evidence gathered at the

18  accident scene; 4) failed to advocate the theory of the defense and to present mitigating evidence;

19  and 5) failed to obtain expert witnesses such as accident reconstruction experts and experts

20  knowledgeable on the effects of the consumption of alcohol.

21        These claims of ineffective assistance of counsel were raised by habeas petition to the

22  California Supreme Court.  (LD 25.)  The claims were summarily denied. (LD 27.)  In a case

23  such as this where the decision is unexplained, the Supreme Court has stated that "a habeas court

24  must determine what arguments or theories supported . . . or could have supported, the state

25  court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

26  those arguments or theories are inconsistent with the holding in a prior decision of this Court."

27  Harrington, 131 S.Ct at 784.  Petitioner bears the burden of showing that "there was no

28  reasonable basis" for the state court decision. Pinholster, 131 S.Ct. at 1402.

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Harrington, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 693).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466 U.S. at 687).  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28

U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788. Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

In this case, Petitioner fails to demonstrate that counsel erred or that the alleged error prejudiced Petitioner. His claims are completely conclusory and unsupported by any facts. He alleges counsel failed to prepare and investigate the case, but he fails to state what additional preparation and investigation would have accomplished, or how the additional preparation and investigation would have altered the outcome. He alleges counsel failed to present expert testimony on the impact of fog on driving, but the record demonstrates that the weather was clear and there was no fog at the relevant time period. Petitioner claims counsel failed to challenge the chain of custody of the evidence. Again, he does not state why counsel should have challenged the chain of custody, or what it would have accomplished. He further complains that counsel failed to present the defense theory and mitigating evidence, but he fails to state what defense theory or mitigating evidence counsel should have presented. Finally, he complains that counsel failed to call an accident reconstruction expert or an expert on the effects of alcohol consumption. The record shows Petitioner was clearly under the influence of alcohol, in light of the strong odor of alcohol on his breath, his actions at the scene, the results of his preliminary alcohol screening, and the results of a blood sample test. Petitioner does not state what evidence the experts would have provided or how the evidence would have changed the outcome. For these reasons, Petitioner fails to demonstrate that the state court rejection of his claim was unreasonable. The claim is without merit.

2.    Prosecutorial Misconduct

Petitioner next claims the prosecutor committed misconduct by: 1) making inflammatory statements; 2) allowing perjured evidence into the trial including: an edited videotape; the results of the blood alcohol analysis of his blood sample; and, the erroneous results of a breath analyzer.

Petitioner presented the claim relating to the prosecutor's remarks on direct appeal to the Fifth District Court of Appeal where it was rejected in a reasoned decision. He then presented it

to the California Supreme Court.  When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).

Petitioner presented the claim relating to perjured evidence by habeas petition to the California Supreme Court where it was summarily denied.  As previously stated, the Court "must determine what arguments or theories supported . . . or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 131 S.Ct at 784.

With respect to the prosecutor's remarks, the appellate court analyzed the claim as follows:

> Leon argues the prosecutor committed prejudicial misconduct by displaying to the jury "his distrust or scorn for defense counsel." We conclude there was no prejudicial prosecutorial misconduct.
>
> Leon addresses three main instances where he claims the prosecutor committed misconduct: (1) questioning the sincerity of defense counsel when he expressed sympathy to Saechao on the loss of her husband and son; (2) three exchanges that occurred over documents presented in the case; and (3) improper comments during closing argument that disparaged counsel or incorrectly stated defense counsel referred to racism in the case.
>
> A prosecutor violates the federal Constitution when he or she engages in a pattern of misconduct so egregious that it infects the trial with such unfairness that it makes the conviction a denial of due process. (*People v. Hill* (1998) 17 Cal.4th 800, 819.) "'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves """the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.""'"[Citation.]' [Citation.]" (*Ibid.*) To preserve a claim of prosecutorial misconduct, a defendant must make a timely objection on this ground and request a curative admonishment or instruction. (*Id.* at p. 820; *People v. Thornton* (2007) 41 Cal.4th 391, 454.) We address each claimed instance of prosecutorial misconduct.
>
> **Forfeiture of two claims of misconduct**
>
> In one of the exchanges over documents, defense counsel objected to one remark where the prosecutor stated, "Counsel takes no interest—" The trial court indicated it did not hear the comment and defense counsel did not pursue the matter further. Failure to obtain a ruling results in forfeiture of this point on appeal. (See, e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 984.)
>
> In closing argument, the prosecutor stated, "the defense drops out numerous things, different issues from blue moons to racism." There was no objection or

request for an admonition as to this remark. Failure to object or request an admonition forfeits appellate review of this claimed instance of misconduct. (*People v. Parson* (2008) 44 Cal.4th 332, 359.)

We have assessed these remarks that were not challenged in the trial court and have determined that any harm arising from them easily could have been cured by appropriate judicial admonishment. Accordingly, these claims were forfeited. (*People v. Green* (1980) 27 Cal.3d 1, 27–28.)

### Curative admonishments

In the instance where the prosecutor questioned defense counsel's sincerity, defense counsel did object. After a recess, the trial court instructed the jury that the prosecutor's remark about sincerity was inappropriate and should be disregarded by the jury.

When the prosecutor remarked that "Counsel's just trying to create a show," defense counsel objected to the remark. The trial court responded by admonishing, "We don't need that last remark," to which the prosecutor responded, "Yes, your Honor."

In rebuttal the prosecutor stated, "when the defense attorneys do not have a case-" Defense counsel objected that the remark was disparaging counsel and the objection was sustained by the trial court.

In each of these three instances defense counsel objected to the remark, the objection was sustained and, when requested to do so, the trial court admonished the jury. There is no indication in the record that the admonishments, when given, were disregarded by the jury or were ineffective. (See *People v. Boyette* (2002) 29 Cal.4th 381, 432.)

### Trial court comment

At another point, there was an exchange over whether defense counsel previously had presented documents to the prosecutor for review and the prosecutor asked for a brief recess to review proffered documents. When defense counsel started to respond, the trial court interrupted and stated, "you're going to give it to counsel."

Here, there does not appear to be any inappropriate remarks by the prosecutor. Requesting a brief recess to review documents and verify that they are the documents previously presented to the prosecution by the defense is not unreasonable. The trial court's remark to defense counsel to give the documents to the prosecution is indicative that the trial court considered the prosecutor's request reasonable and defense counsel's engaging in the exchange unnecessary. There is no indication that the trial court overruled valid objections or otherwise discouraged defense counsel from taking action. (See, e.g., *People v. Hillhouse* (2002) 27 Cal.4th 469, 501–502.)

(LD 18.)

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). To constitute a due process violation, the

1   prosecutorial misconduct must be "of sufficient significance to result in the denial of the
2   defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United
3   States v. Bagley, 473 U.S. 667 (1985)).   Any claim of prosecutorial misconduct must be
4   reviewed within the context of the entire trial. Id. at 765-66; United States v. Weitzenhoff, 35
5   F.3d 1275, 1291 (9th Cir. 1994).  The court must keep in mind that "[t]he touchstone of due
6   process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the
7   culpability of the prosecutor" and "the aim of due process is not punishment of society for the
8   misdeeds of the prosecutor but avoidance of an unfair trial to the accused." Smith v. Phillips,
9   455 U.S. 209, 219 (1982).   "Improper argument does not, per se, violate a defendant's
10  constitutional rights." Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996) (quoting Jeffries
11  v. Blodgett, 5 F.3d 1180, 1191 (9th Cir.1993)).  If prosecutorial misconduct is established, and it
12  was constitutional error, the error must be evaluated pursuant to the harmless error test set forth
13  in Brecht v. Abrahamson, 507 U.S. 619 (1993).  See Thompson, 74 F.3d at 1577 ("Only if the
14  argument were constitutional error would we have to decide whether the constitutional error was
15  harmless.").

16         The knowing use of false or perjured testimony against a defendant to obtain a conviction
17  is unconstitutional. Napue v. Illinois, 360 U.S. 264 (1959).  In Napue, the Supreme Court held
18  that the knowing use of false testimony to obtain a conviction violates due process regardless of
19  whether the prosecutor solicited the false testimony or merely allowed it to go uncorrected when
20  it appeared. Id. at 269.  The Court explained that the principle that a state may not knowingly
21  use false testimony to obtain a conviction-even false testimony that goes only to the credibility of
22  the witness-is "implicit in any concept of ordered liberty." Id.   Nevertheless, simple
23  inconsistencies in testimony are insufficient to establish that a prosecutor knowingly permitted
24  the admission of false testimony.   United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th
25  Cir.1995).  "Discrepancies in . . . testimony . . . could as easily flow from errors in recollection as
26  from lies." Id.

27         In this case, Petitioner fails to demonstrate that the prosecutor's remarks were so
28  inflammatory as to deprive him of a fair trial.  As noted by the appellate court, to the extent that

defense counsel objected to the remarks, the objections were sustained and the jury was admonished to disregard the remarks.  A jury is presumed to follow its instructions, see Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985), and the state court reasonably found that the jury did so.  Petitioner offers nothing to demonstrate that the jury ignored the admonishments, nor is there anything in the record to support his claim.  Moreover, the state court reasonably found that any prejudicial effect was undoubtedly minimal or nonexistent.  Therefore, Petitioner's challenge to the inflammatory remarks fails.

Petitioner also claims the prosecutor committed misconduct by allowing evidence into trial that he knew to be false.  As to the edited videotape, the claim is completely conclusory. Petitioner fails to state how the videotape was edited in such a manner as to render it false.  Even if the evidence was false, Petitioner fails to demonstrate that the prosecutor knew it to be false. With respect to Petitioner's claim that the initial breath analysis and the subsequent blood analysis were flawed, Petitioner fails to show how they were flawed.  At most, it could be argued that there was a discrepancy between the figures.  Nevertheless, it is indisputable that Petitioner was under the influence.  As pointed out by Respondent, apart from the breath and blood analysis tests, Petitioner's own defense expert testified that there was a very strong probability that Petitioner was under the influence of alcohol with a blood alcohol level between .10 and .15 at the time of the accident.  (RT[3] 909-911, 943-944, 955-957.)   In addition, the record showed Petitioner traveled approximately 5.6 miles the wrong way on the freeway, despite efforts by other drivers to gain his attention by honking their horns and flashing their lights.  (LD 25.)  And when officers approached him at the scene, Petitioner was waving his arms and using profanity, his eyes were twitching, red and glossy, and his speech was broken and slurred.  (LD 25.) Officers detected a strong smell of alcohol on Petitioner and he was unable to track stimuli with his eyes.  (LD 25.)  In light of the evidence, Petitioner fails to demonstrate that the prosecutor relied on false evidence which the prosecutor knew to be false.  In addition, there is no question that any error was harmless.  The state court rejection of the claim was not inconsistent with

---

[3] "RT" refers to the Reporter's Transcript on Appeal.

1  Supreme Court precedent.  The claim must be rejected.

2        3.        Police Misconduct

3        Petitioner next claims that the police were biased in their gathering of evidence and

4  committed misconduct, including: 1) by failing to gather evidence at the scene; 2) in

5  misrepresenting that the weather was clear when a helicopter was unable to land due to fog; 3)

6  by waiting until the brightest night of the year to gather evidence from the scene; 4) by

7  performing the "HGN" test in an improper manner; 5) by using testing equipment that was

8  broken; 6) and by tampering with a videotaped recording of Petitioner's statement.

9        This claim was presented by habeas petition to the California Supreme Court, where it

10  was summarily denied.   The Court must therefore "determine what arguments or theories

11  supported . . . or could have supported, the state court's decision; and then it must ask whether it

12  is possible fairminded jurists could disagree that those arguments or theories are inconsistent

13  with the holding in a prior decision of this Court." Harrington, 131 S.Ct at 784.

14        A defendant has a constitutionally protected privilege to request and obtain from the

15  prosecution evidence that is either material to the guilt of the defendant or relevant to the

16  punishment to be imposed.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Even in the absence of

17  a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence

18  that would raise a reasonable doubt about the defendant's guilt.  United States v. Agurs, 427 U.S.

19  97, 112 (1976).  In order to demonstrate a violation of due process resulting from the destruction

20  of evidence, Petitioner must show that the officers were acting in bad faith.  California v.

21  Trombetta, 467 U.S. 479, 488 (1984).  Further, Petitioner must demonstrate that the evidence

22  was constitutionally material, that is, the "evidence must both possess an exculpatory value that

23  was apparent before the evidence was destroyed, and be of such a nature that the defendant

24  would be unable to obtain comparable evidence by other reasonably available means." Id. at 489

25  (citing Agurs, 427 U.S. at 109-110).

26        In this case, Petitioner fails to meet his burden.  He claims officers failed to conduct a

27  proper search, but he does not state how the search was improper or what evidence would have

28  been gathered had the officers conducted a proper search.  He states there was information that a

14

1   helicopter may not have been able to land at some point because of fog, but this evidence was

2   not constitutionally material and Petitioner does not demonstrate that the officers acted in bad

3   faith.  Several witnesses testified that the night was clear at the location and time of the accident.

4   (RT 143-144, 171, 181, 269.)  Whether there may have been fog in the area at some point

5   thereafter was irrelevant.  In addition, evidence of fog in the area could easily have been obtained

6   by other available means.  Moreover, defense counsel was in possession of climatological data

7   and specifically referred to said data during his examination of witnesses. (RT 552-553.)  As to

8   the "HGN" test, the testing equipment, and the videotape, Petitioner fails to demonstrate how the

9   tests were performed improperly or how the videotape was tampered with.  Further, he fails to

10  show that the officers acted in bad faith.  Lastly, he fails to demonstrate how he was prejudiced

11  by the officers' alleged actions.  Therefore, Petitioner fails to show that there was no reasonable

12  basis for the state court rejection of his claim.

13          4.      Admission of Evidence

14  Petitioner alleges the trial court erred with respect to the admission of evidence.  He

15  claims the court excluded evidence that there were sober drivers who had been unable to identify

16  the road signs, and like Petitioner, had driven off the road.  He alleges the court excluded

17  evidence that the signage had been improved after the accident.  He claims the trial court erred

18  by admitting evidence that he had sustained prior DUI convictions.  Finally, he asserts that the

19  court allowed false witness testimony to go uncorrected.

20  Respondent alleges that the allegations set forth above were never raised in the context of

21  trial court error.  Rather, Respondent states the claims were presented in the context of

22  ineffective assistance of counsel, prosecutorial misconduct, and failure by the investigator.

23  Therefore, Respondent contends, the claim is unexhausted.  28 U.S.C. § 2254(b)(1) requires state

24  petitioners proceeding in a federal habeas action to exhaust state judicial remedies.  28 U.S.C. §

25  2254(b)(1).  To exhaust a claim, a petitioner must give the highest state court a full and fair

26  opportunity to hear a claim by presenting the court with the claim's factual and legal basis.

27  Duncan v. Henry, 513 U.S. 364, 365 (1995).  In this case, Petitioner did not specifically present

28  the legal basis of his claim to the California Supreme Court; therefore, the claim is unexhausted.

1    Id.  Nevertheless, the Court will address the claim as it is plainly without merit.  28 U.S.C. §
2    2254(b)(2).

3         A federal court in a habeas proceeding does not review questions of state evidence law.
4    Our inquiry is limited to whether the evidence ruling "resulted in a decision that was contrary to,
5    or involved an unreasonable application of, clearly established Federal law, as determined by the
6    Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Thus, the question here is not
7    whether the state's exclusion of evidence violated state evidentiary rules, but whether the
8    exclusion of evidence resulted in a decision contrary to or that involved an unreasonable
9    application of established Supreme Court precedent.  Id., Williams, 529 U.S. at 412.  It is, in fact,
10   possible for a state court to violate its rules of evidence without resulting in a trial so unfair as to
11   violate due process.  Jamaal, 926 F.2d at 919.  "A state court's evidentiary rulings can form the
12   basis for habeas relief under the due process clause only when they were so conspicuously
13   prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due
14   process."  Osborne v. Purkett, 411 F.3d 911, 917 (8th Cir. 2005) (citing Parker v. Bowersox, 94
15   F.3d 458, 460 (8th Cir. 1996)).

16        "State and federal rulemakers have broad latitude under the Constitution to establish rules
17   excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006)
18   (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996)
19   (holding that due process does not guarantee a defendant the right to present all relevant
20   evidence).  This latitude is limited, however, by a defendant's Sixth and Fourteenth Amendment
21   rights to due process and to present a defense.  See Holmes, 547 U.S. at 324.  "While the
22   Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate
23   purpose or that are disproportionate to the ends that they are asserted to promote, well-
24   established rules of evidence permit trial judges to exclude evidence if its probative value is
25   outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential
26   to mislead the jury."  Id. at 325-326; see Egelhoff, 518 U.S. at 42 (holding that the exclusion of
27   evidence does not violate the Due Process Clause unless "it offends some principle of justice so
28   rooted in the traditions and conscience of our people as to be ranked as fundamental").  The

1  defendant, not the state, bears the burden to demonstrate that the principle violated by the

2  evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as

3  fundamental." Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).

4      With respect to the *admission* of evidence, there is no Supreme Court precedent

5  governing a court's discretionary decision to admit evidence as a violation of due process.  In

6  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.2009), the Ninth Circuit stated:

7      The Supreme Court has made very few rulings regarding the admission of
       evidence as a violation of due process. Although the Court has been clear that a
8      writ should be issued when constitutional errors have rendered the trial
       fundamentally unfair, [Citation omitted.], it has not yet made a clear ruling that
9      admission of irrelevant or overtly prejudicial evidence constitutes a due process
       violation sufficient to warrant issuance of the writ. Absent such "clearly
10     established Federal law," we cannot conclude that the state court's ruling was an
       "unreasonable application."   [Citation omitted.]  Under the strict standards of
11     AEDPA, we are therefore without power to issue the writ . . . .

12     Applying these legal principles to this case, the Court cannot say that there was no

13 reasonable basis for the state court's rejection of Petitioner's evidentiary claims.  Petitioner states

14 the trial court erred with respect to evidence concerning sober drivers who missed road signs of

15 drove off the road as Petitioner did, but Petitioner provides no foundation to his claim.

16 Moreover, the record demonstrates that defense counsel fully explored this subject during his

17 examination of the investigating officers, and counsel elicited testimony that an incident had

18 occurred involving a sober driver missing road signs and driving the wrong way. (RT 558-588,

19 598-622.)  Likewise, Petitioner offers no foundation for his claim that the trial court erred in

20 excluding evidence of improved signage.  With respect to the claim that the trial court allowed

21 false and uncorrected testimony, Petitioner does not state what testimony was false, or how he

22 was prejudiced.  Therefore, these claims fail.

23     Petitioner also claims that the trial court erred in admitting evidence of Petitioner's prior

24 DUI convictions.   As stated above, there is no clearly established Supreme Court precedent

25 governing a trial court's discretionary decision to admit evidence as a violation of due process.

26 Holley, 568 F.3d at 1101.  Indeed, the Supreme Court has expressly reserved consideration of

27 whether admission of propensity evidence may violate due process.  Alberni v. McDaniel, 458

28 F.3d 860, 863-64 (9th Cir.2006); Estelle, 502 U.S. at 75, n. 5.  Therefore, Petitioner cannot

1  demonstrate that the state court decision was contrary to, or involved an unreasonable application

2  of, clearly established federal law.  See 28 U.S.C. § 2254(d).  The claim should be rejected.

3            5.      Judicial Misconduct

4            In his next claim, Petitioner alleges the trial judge committed misconduct by: 1) denying

5  a change of venue; 2) not allowing the new defense attorney to obtain investigation reports

6  which were "dumped" by the initial attorney in the case; and 3) failing to allow defense counsel

7  sufficient time to prepare the case for a proper defense.

8            This claim was raised before the California Supreme Court by habeas petition where it

9  was summarily denied.   Therefore, the Court must therefore "determine what arguments or

10  theories supported . . . or could have supported, the state court's decision; and then it must ask

11  whether it is possible fairminded jurists could disagree that those arguments or theories are

12  inconsistent with the holding in a prior decision of this Court." Harrington, 131 S.Ct at 784.

13            **a.      Change of Venue**

14            With respect to change of venue, defense counsel first raised the issue on January 4,

15  2010, when he advised the trial court of a front page article in a local newspaper which described

16  the case in detail as well as noting Petitioner's multiple priors. (RT 41-42.)  Defense counsel

17  stated he was "gravely concerned" that Petitioner would not get a fair trial in Tulare County

18  because of the publication. (RT 42.)  Defense counsel asked for a continuance or an opportunity

19  to make a motion for change of venue.  (RT 43.)  The trial court reviewed the article and stated:

20            It seems to be nothing more than what's happened in numerous cases at the start
             of a trial that may have some noteworthy aspects to it that the paper prints at the
21            start of trial and the allegations.  I don't see the necessity of continuing the trial.
             If we continued it, I would bet even money that when we start the trial again there
22            will be a similar article at the start of trial again.

23  (RT 43.)

24            The prosecutor responded that the information is in the public records, and the

25  "preliminary hearing transcripts lay out everything about this case." (RT 44.)  The trial court

26  stated the issue would be dealt with during jury selection.  (RT 45.)

27            In his petition, Petitioner claims the trial judge committed misconduct by denying him a

28  change of venue.  However, the record does not show that Petitioner ever moved for a change of

1   venue. At most, it appears he requested a continuance. Therefore, Petitioner's claim fails for

2   that reason alone. Nevertheless, even if the Court were to find that he had made a motion for

3   change of venue, his due process rights to a fair trial were not violated.

4           Defendants enjoy the right to due process to be tried by "a panel of impartial,

5   'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 723 (1961). The Ninth Circuit has held that a

6   habeas petitioner who alleges that the jury's exposure to prejudicial pretrial publicity prevented

7   him from receiving a fair trial has the burden to produce pertinent portions of the state court

8   record. Austad v. Risley, 761 F.2d 1348, 1353 (9th Cir.1985) (en banc). The determination of a

9   juror's partiality or bias is a factual determination to which 28 U.S.C. § 2254(d)'s presumption of

10  correctness applies, id. at 1350, and it is Petitioner's duty under § 2254(d) to establish by

11  convincing evidence that the challenged factual determinations of the state court were erroneous.

12  Id. at 1353. If prejudicial pretrial publicity makes it impossible to seat an impartial jury, then the

13  trial judge must grant the defendant's motion for change of venue. Harris v. Pulley, 885 F.2d

14  1354, 1361 (9th Cir.1988). The prejudice requirement can be satisfied by a finding of: 1)

15  presumed prejudice; or 2) actual prejudice.

16          i.      Presumed Prejudice

17          "Prejudice is presumed when the record demonstrates that the community where the trial

18  was held was saturated with prejudicial and inflammatory media publicity about the crime." Id.

19  Courts rarely find presumed prejudice because "saturation" defines conditions found only in

20  extreme situations. Id.

21          In Rideau v. Louisiana, 373 U.S. 723 (1963), the Supreme Court found that the denial of

22  a motion for change of venue violated due process when a confession made by the defendant was

23  videotaped and broadcast three times by a local television station. Because three members of the

24  jury who ultimately convicted the defendant had viewed the tape, the Court found the media

25  publicity to be sufficiently extreme to invoke the presumed prejudice rule. Id. Unless the

26  publicity renders the trial a "hollow formality," id. at 726, however, the presumed prejudice rule

27  is rarely applicable. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 554 (1976). In this case,

28  it is clear prejudice cannot be presumed. The trial court reasonably determined that the article

1   was merely routine coverage of a case that occurs with most every case at the start of trial.

2   Petitioner submits nothing, nor is there anything in the record, from which to conclude that

3   Petitioner's pretrial publicity rendered his trial a "hollow formality."

4        ii.   <u>Actual Prejudice</u>

5       Actual prejudice exists if the jurors demonstrated actual partiality or hostility that cannot

6   be laid aside. <u>Harris</u>, 885 F.2d at 1363. "Jurors need not, however, be totally ignorant of the

7   facts and issues involved." <u>Murphy v. Florida</u>, 421 U.S. 794, 800 (1975).

8       Actual prejudice is not demonstrated by merely showing juror exposure to pretrial

9   publicity. "The relevant question is not whether the community remembered the case, but

10   whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the

11   defendant." <u>Patton v. Yount</u>, 467 U.S. 1025, 1035 (1984). The Supreme Court has held that a key

12   factor in gauging the reliability of juror assurances of impartiality is the percentage of veniremen

13   who "will admit to disqualifying prejudice." <u>Murphy</u>, 421 U.S. at 803. The higher percentage of

14   veniremen admitting to a previously formed opinion on the case, the greater the concern over the

15   reliability of the voir dire responses from the remaining potential jurors. <u>Id</u>.

16       In this case, Petitioner offers nothing to show that any juror was biased or prejudiced

17   against him as a result of the news article. Whether or not the jurors heard or read about the case

18   prior to trial is immaterial, since all jurors swore under oath that they could impartially judge

19   petitioner's guilt or innocence. <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1189 (9th Cir.1993). It is

20   Petitioner's duty under § 2254(d) to establish by convincing evidence that the challenged factual

21   determinations of the state court were erroneous. <u>Austad</u>, 761 F.2d at 1353. He fails to do so.

22   Since Petitioner fails to demonstrate actual prejudice caused by the pretrial publicity, Petitioner's

23   claim fails.

24       **b.**    **Continuance**

25       In the second and third subclaims, Petitioner alleges the trial court abused its discretion in

26   denying defense counsel's motion for continuance based on late discovery and lack of time for

27   preparation. He claims his second attorney did not have sufficient time to obtain investigation

28   reports, prepare a proper defense, and interview witnesses.

1   "The matter of continuance is traditionally within the discretion of the trial judge, and it
2   is not every denial of a request for more time that violates due process even if the party fails to
3   offer evidence or is compelled to defend without counsel." <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589
4   (1964) (citing <u>Avery v. Alabama</u>, 308 U.S. 444 (1940)).   "Contrariwise, a myopic insistence
5   upon expeditiousness in the face of a justifiable request for delay can render the right to defend
6   with counsel an empty formality." <u>Id</u>. (citing <u>Chandler v. Fretag</u>, 348 U.S. 3 (1954)).   "A trial
7   court clearly abuses its discretion only if denial of the continuance was arbitrary or
8   unreasonable." <u>United States v. Wills</u>, 88 F.3d 704, 711 (9th Cir.1996) (quoting <u>United States v.</u>
9   <u>Torres-Rodriguez</u>, 930 F.2d 1375, 1383 (9th Cir.1991)).   "There are no mechanical tests for
10  deciding when a denial of a continuance is so arbitrary as to violate due process. The answer
11  must be found in the circumstances present in every case, particularly in the reasons presented to
12  the trial judge at the time the request is denied." <u>Ungar</u>, 376 U.S. at 589.

13      In this case, the trial court addressed defense counsel's request on December 21, 2009,
14  for a continuance as follows:

15          The defense had also made a request for a continuance of the trial date.  I had an
            in camera hearing with Mr. Pernik [defense counsel] in regards to the reasons for
16          the continuance, and I don't find good cause to continue the matter.  So the trial
            date of January 4th is confirmed.
17

18  (RT 15.)

19      On January 4, 2010, the date set for trial, defense counsel renewed his request for
20  continuance. (RT 21.)  Defense counsel complained that he had received over one hundred pages
21  of additional discovery on December 22, 2009, which included a Multidisciplinary Accident
22  Investigation ("MAIT") report.  (RT 21-22.)  Defense counsel claimed that the report showed the
23  brakes in Petitioner's vehicle were incorrectly installed, and the handbrake had been applied.
24  (RT 22.)

25      The prosecutor stated that he had overlooked the MAIT report in his preparations for
26  trial. (RT 23.)  He stated that he had no intention of using the report for anything unless defense
27  counsel attempted to make an issue regarding mechanical defects as a cause of the collision.  (RT
28  23-24.)   The prosecutor further noted that the report showed that although the brakes were

1   incorrectly installed, it did not prevent the brakes from operating as intended. (RT 24.)  It also

2   indicated that mechanical failures or defects were not a cause of the collision.  (RT 24.)

3          The trial court denied the continuance. (RT 24.)  The court stated there was no need for

4   sanctions since the prosecutor did not intend to use the MAIT report.  (RT 27-28.)  The court

5   further stated that the defense could have investigated the vehicle or retained an accident

6   reconstruction expert at any time, and based on the court's recollection of the evidence at

7   preliminary hearing, it was unnecessary in any case. (RT 31.)

8          As Respondent notes, the trial court granted continuances in the case from November 16,

9   2009, until the date of trial on January 4, 2010.  (CT[4] 181-187.)  Moreover, based on the fact that

10  the prosecution never used the report in its case-in-chief, there was no prejudice.  Petitioner fails

11  to demonstrate that the trial court abused its discretion and denied his due process rights.  He

12  fails to show that the state court's rejection was contrary to, or an unreasonable application of,

13  Supreme Court authority. The claim should be denied.

14         6.   Instructions on Intent

15         Petitioner alleges the trial court failed to respond to the jury's questions regarding intent.

16  He further claims the jury panel was biased because a particular juror "was previously

17  represented by the state[']s attorney in a [separate] case for his family, and was in fact swayed

18  for the job the D.A. had [performed] for his family." (Pet. at 15.)  This claim was raised and

19  rejected in a habeas proceeding before the California Supreme Court.

20         The record reflects that during trial, the jurors asked for clarification of intent: "Is intent

21  lost when you are too drunk to make a rational conscious decision. At what point is a decision

22  conscious?" (RT 1278.)  The trial court instructed the jury that there had been no evidence that

23  Petitioner had blacked out or lost consciousness.  (RT 1301.)  The court further explained that

24  "[n]o act committed by a person while in a state of voluntary intoxication is less criminal by

25  reason of that condition.  In the crimes charged in this case, the fact the defendant was

26  voluntarily intoxicated is not a defense and does not relieve him of his responsibility for the

27

28  _____
    [4] "CT" refers to the Clerk's Transcript on Appeal.

1  crime." (RT 1301.)  Thus, the record shows that the trial court did in fact respond to the jury's

2  question on intent.  The claim fails.

3      Petitioner also claims the jury was biased because Juror No. 9 stated her brother had been

4  a victim of a gang crime, and the prosecutor had been the initial prosecutor in the matter. (RT 22,

5  56, 85-86.)  Ultimately, the defense exercised a peremptory challenge on the prospective juror

6  thereby excusing the prospective juror from the venire.  (RT 91-92.)  Therefore, no prejudice

7  could possibly have accrued. The claim should be rejected.

8      7.    Double Jeopardy

9      In his last claim, Petitioner alleges his convictions for manslaughter and murder violate

10 double jeopardy principles.  The claim was raised by habeas petition and summarily rejected by

11 the California Supreme Court.

12     The  Fifth  Amendment's  Double  Jeopardy  Clause  prevents  multiple  or  successive

13 prosecutions for the same offense.  The Supreme Court set forth a generally applicable test in

14 Blockburger v. United States, 284 U.S. 299 (1932), to determine whether two statutory

15 provisions prohibit the same offense. The Blockburger test, as it has become known, states:

16 "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions,

17 the test to be applied to determine whether there are two offenses or only one, is whether each

18 provision requires proof of a fact which the other does not." Id. at 304.

19     In  this  case,  Petitioner  was  tried  and  convicted  of  murder  and  gross  vehicular

20 manslaughter.   The conviction of murder required the state to prove that: 1) Petitioner

21 intentionally committed an act; 2) The natural and probable consequences of the act were

22 dangerous to human life; 3) At the time he acted, he knew his act was dangerous to human life;

23 4) He deliberately acted with conscious disregard for human life; and 5) The act caused the death

24 of another person.  (CT 262.)  To obtain a conviction of gross vehicular manslaughter while

25 intoxicated, the state had to prove that: 1) Petitioner drove under the influence of an alcoholic

26 beverage or while having a blood alcohol level of .08 or higher; 2) He acted in a reckless way

27 that creates a high risk of death or great bodily injury; 3) A reasonable person would have known

28 that acting in that way would create such a risk; and 4) Petitioner's conduct caused the death of

1  another person. (CT 264.)

2      The Ninth Circuit confronted this same issue in <u>Sass v. Alameida</u>, 45 F. App'x 816 (9th

3  Cir. 2002).[5]   As noted by the Ninth Circuit, "[u]nder California law, gross vehicular

4  manslaughter while intoxicated requires proof of facts which need not be proved when the

5  charge is murder, namely, intoxication and use of a vehicle." <u>Id</u>. at 817 (citing <u>People v.</u>

6  <u>Sanchez</u>, 24 Cal.4th 983, 103 Cal.Rptr.2d 698, 16 P.3d 118, 120-21 (2001), and <u>Brown v. Ohio</u>,

7  432 U.S. 161, 167 (1977) (stating that a state court has the final authority to interpret its own

8  statutes)). Accordingly, murder and gross vehicular manslaughter while intoxicated, as defined

9  by the California Supreme Court, do not constitute the "same offense" under the <u>Blockburger</u>

10  test. Therefore, Petitioner's multiple convictions for those offenses did not violate the Double

11  Jeopardy Clause. <u>See</u> <u>Blockburger</u>, 284 U.S. at 304.

12      Accordingly, the state court rejection of Petitioner's claim was not contrary to or an

13  unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. §

14  2254(d)(1). The claim should be denied.

15                                     **IV.**

16                          **RECOMMENDATION**

17      Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

18  corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter

19  judgment.

20      This Findings and Recommendation is submitted to District Judge Anthony W. Ishii

21  pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of

22  Practice for the United States District Court, Eastern District of California. Within thirty (30)

23  days after being served with a copy of this Findings and Recommendation, any party may file

24  written objections with the Court and serve a copy on all parties. Such a document should be

25  captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

26  Objections shall be served and filed within fourteen (14) days after service of the Objections.

27  ─────────────────

28  [5] Pursuant to Rule 32.1(a) of the Rules of Appellate Procedure, the Court may cite to unpublished appellate court opinions.

The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 27, 2014**

UNITED STATES MAGISTRATE JUDGE